**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-15-0346-1 |
| | § | |
| MKRTICH M. YEPREMIAN | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Mkrtich M. Yepremian, federal prisoner register number 91659-379, filed a motion for a compassionate release through counsel pursuant to 18 U.S.C. § 3582(C)(1)(A). (Docket Entry No. 620.) The Government filed a response in opposition (Docket Entry No. 623), to which Defendant filed a reply (Docket Entry No. 625). Defendant's counsel subsequently filed an advisory of new appellate decisions, and the Government filed an updated response. (Docket Entries No. 628, 630.) The motion is ripe for disposition.

Having considered the motion and the subsequent responsive pleadings, the record, matters of public record, and the applicable law, the Court GRANTS the motion for a compassionate release for the reasons explained below.

*Background*

Defendant is a 63-year-old male prisoner currently confined at the Bureau of Prisons ("BOP") FCI Terminal Island, a Care Level 3 facility in San Pedro, California.[1] Defendant pleaded guilty before this Court to conspiracy to commit healthcare fraud and payment and

---

[1] Care Level 3 is a BOP medical care designation for inmates who have complex, and usually chronic, medical conditions and who require frequent clinical contacts to maintain control or stability of their condition, or to prevent hospitalization or complications.

receipt of healthcare kickbacks. He was sentenced in April 2018 to 120 months' imprisonment, followed by a three-year term of supervised release. Restitution was ordered in an amount in excess of $9 million. The BOP currently reports Defendant's anticipated release date as December 25, 2026.

Defendant contends he is entitled to a compassionate release due to congestive heart failure, type 2 diabetes, and obesity. He further asserts that, over the past two years, he has undergone five hospitalizations for atrial fibrillation and respiratory distress, ultimately necessitating surgical placement of two coronary arterial shunts. Defendant asks the Court to grant his motion, reduce his sentence to time served, and release him to supervised release and home confinement.

## *Legal Standards*

Defendant brings his motion for a sentence reduction and compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which allows a court in its discretion to modify a sentence under certain circumstances. Under the current version of the statute, a motion for modification may be made by either the Director of the BOP or by a defendant after the defendant has fully exhausted his administrative rights. 18 U.S.C. § 3582(c)(1)(A).

Compassionate release under section 3582(c)(1)(A) authorizes a court to modify a defendant's term of imprisonment if the court finds that two conditions have been satisfied. The first is that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The second is that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The court

2

also must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. *Id*. *See also United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). The district court must base its decision on "a thorough factual record" and "must provide specific factual reasons, including but not limited to due consideration of the § 3553(a) factors, for its decision." *Id*.

The Sentencing Commission has addressed in a policy statement what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody. *See* U.S.S.G. § 1B1.13. The relevant policy statement outlines four categories of circumstances that may constitute "extraordinary and compelling reasons" for a sentence reduction, based on terminal medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, Application Note 1. However, the Court's reference to the Guidelines is only one step in its own determination of whether extraordinary and compelling reasons warrant a reduction of Defendant's sentence. The Court is free to determine whether Defendant's particular medical condition constitutes extraordinary and compelling reasons for a compassionate release. *See United States v. Gonzalez*, 819 F. App'x 283, 284 (5th Cir. Sept. 4, 2020); *United States v. Hernandez*, 645 F.3d 709, 712 (5th Cir. 2011) ("[T]he decision whether to ultimately grant a modification is left to the sound discretion of the trial court."). A defendant in a motion brought under section 3582(c)(1)(A) has the burden to establish that relief is warranted in his case.

Even if extraordinary and compelling reasons for modification or early release are shown, Sentencing Guideline § 1B1.13(2) authorizes a sentence reduction only if the

defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)." Moreover, as provided in both section 3582(c)(1)(A) and the policy statement, a court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training, medical care, or other treatment in the most effective manner. 18 U.S.C. § 3553(a). The policy statement recognizes that the sentencing court "is in a unique position to determine whether the circumstances warrant a reduction . . . after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement[.]" U.S.S.G. § 1B1.13 cmt. 4.

Thus, a defendant may be eligible for compassionate release under section 3582(c)(1)(A) if the Court finds "extraordinary or compelling reasons" to warrant a sentence reduction, the defendant is found not to pose a risk of danger to the community, and it finds that a sentence reduction is consistent with United States Sentence Commission policy statements.

### *Analysis*

*Exhaustion*

On August 13, 2020, Defendant submitted a request for compassionate release to the warden of FCI Terminal Island. The request was denied on September 1, 2020.

4

The Court finds that Defendant has exhausted his statutorily-mandated administrative remedies and may pursue the instant motion. *See United States v. Franco*, 973 F.3d 465 (5th Cir. 2020).

*Extraordinary and Compelling Reasons*

Defendant argues that his medical history of congestive heart failure, type 2 diabetes, obesity, atrial fibrillation, and hospitalizations for implantation of coronary arterial shunts, respiratory distress, and respiratory failure, constitute extraordinary and compelling reasons for his release from prison. He argues that the CDC recognizes these medical conditions as leaving individuals at high risk for death from COVID-19, and that he is a medically vulnerable prisoner who should not remain in prison.

The need to set forth an in-depth analysis of Defendant's medical condition has been curtailed. The Government initially contended that Defendant's medical conditions were not "extraordinary and compelling reasons" under the statute. However, on December 8, 2020, the Government filed an updated response, stating that it "now agrees Defendant's chronic medical condition presents an extraordinary and compelling reason qualifying him for compassionate release under the statute and guideline policy statement." (Docket Entry No. 630.) Thus the issue of "extraordinary and compelling reasons" is not disputed.

The Court has reviewed the medical records submitted by the parties and agrees that Defendant's medical conditions qualify as extraordinary and compelling reasons for his compassionate release under the statute. Defendant is 63 years old and suffers from several co-morbidities, including type 2 diabetes, obesity, coronary artery disease, cardiomyopathy,

and respiratory issues, which the Centers for Disease Control ("CDC") have identified as elevating the risk of serious illness or death from a COVID-19 infection.[2] He has been hospitalized five times since October 2018 for atrial fibrillation, congestive heart failure requiring surgical implantation of stents, and acute respiratory distress requiring intubation. As noted in the records, Defendant's medical conditions are worsening; his first hospitalization in late 2018 lasted a day; his most recent hospitalization in April 2020 lasted three weeks.

For these reasons, Defendant's medical conditions constitute extraordinary and compelling reasons for a compassionate release.

*Sentencing Factors*

As required by the statute, the Court has considered the additional factors under 18 U.S.C. § 3553(a) and find that they do not preclude the granting of a compassionate release. There is no question that Defendant has utilized his prison time in a positive manner. His records show that he has completed numerous educational classes while incarcerated, and he has no disciplinary infractions. (Docket Entry No. 620-2.) If released, he plans to live in his ex-wife's home in California where he would have separate accommodations; his daughter has agreed to handle his finances and help with his medical needs. (Docket Entry No. 620-13, pp. 36, 42.)   Moreover, in light of Defendant's age and serious medical

---

[2]https://www.cdc.gov/coronavirus/ (accessed on January 26, 2021).

conditions, he would not constitute a danger to the community if released to supervised release and/or home confinement.

Defendant has served only 31 months – approximately 26% – of the 120-month sentence imposed by this Court, a factor that would ordinarily weigh against a compassionate release, However, other factors weigh in favor of relief. Defendant's criminal conduct was non-violent, and no private entities or individuals were harmed. (Docket Entry No. 432, p. 10.) He is a first-time offender with strong family ties, and his family has expressed its willingness to monitor and provide for Defendant if relief is granted. The record does not show that these family members had any involvement in, or prior knowledge of, Defendant's criminal activities. Although the Court acknowledges the severity of Defendant's crime and does not minimize it, a reduction of Defendant's sentence, especially in light of his chronic medical conditions, will not diminish the seriousness of the offense, promote disrespect for the law, provide an unjust punishment, or afford inadequate deterrence.

## *Conclusion*

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's motion for compassionate release under 18 U.S.C. § 3582(C)(1)(A) (Docket Entry No. 620) is GRANTED.

2. Defendant is re-sentenced to a term of credit for time served as to all counts in the Bureau of Prisons, followed by a term of THREE YEARS of supervised release as to all counts, to run concurrently. The Bureau of Prisons is ORDERED to release Defendant from its custody immediately.

3. Defendant shall serve his term of supervised release according to the terms and conditions imposed by this Court in the original judgment entered on May 9, 2018 (Docket Entry No. 526), in this order, and by the United States Probation

        Office in the federal judicial district where Defendant resides ("Probation Office") following his release from incarceration.

4. As an additional condition of supervised release, Defendant is ORDERED restricted to his residence at all times (home incarceration), except for medical necessities, court appearances, or other activities specifically approved by the Probation Office or the Court, for TWELVE MONTHS following his release from incarceration. Defendant will be monitored by a form of location monitoring technology at the discretion of the Probation Office during the term of his supervised release, and he must follow the rules and regulations of the location monitoring program. The Probation Office will initiate the monitoring program as soon as practicable and when deemed appropriate given the current COVID-19 outbreak. Defendant must pay the costs of the program to the extent that he is financially able, as determined by the Probation Office.

Signed at Houston, Texas, on February 9, 2021.

                                                                    Gray H. Miller
                                                Senior United States District Judge