United States District Court
Southern District of Texas
**ENTERED**
August 11, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL ACTION NO. H-15-346-1 |
| v. | § | |
| | § | CIVIL ACTION NO. H-19-1153 |
| MKRTICH M. YEPREMIAN | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Mkrtich M. Yepremian, proceeding *pro se*, filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, with a memorandum of law. (Docket Entries No. 568, 569). The Government filed two responses in opposition (Docket Entries No. 575, 583), to which defendant filed two replies (Docket Entries No. 582, 585.)

Having considered the section 2255 motion and memorandum, the responses and replies, the record, and the applicable law, the Court DENIES the section 2255 motion for the reasons that follow.

*Background and Claims*

Defendant pleaded guilty before this Court to conspiracy to commit healthcare fraud and payment and receipt of healthcare kickbacks. He was sentenced in April 2018 to 120 months' imprisonment in the Bureau of Prisons ("BOP"), followed by a three-year term of supervised release. Restitution was ordered in an amount in excess of $9 million. No direct appeal was taken.

On February 9, 2021, the Court granted defendant a compassionate release under 18 U.S.C. § 3582(C)(1)(A), and reduced his sentence to time served through an amended judgment. Although he was released from BOP custody on February 9, 2021, he has not provided the Court with a current address of record. Defendant's release from prison did not render his habeas claims moot, as he must complete his three-year term of supervised release and pay restitution. However, any habeas claims challenging the 120-month term of incarceration are now moot due to defendant's compassionate release and amended judgment.

Defendant raises two claims for ineffective assistance of counsel, arguing that counsel failed to object to loss calculation errors and the level of restitution. He seeks to have his conviction and/or sentence vacated, set aside, or corrected. (Docket Entry No. 569, p. 7.) He does not raise a claim directly challenging the validity of his guilty plea or seeking to set aside his guilty plea.

### *Legal Standards*

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to section 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the district court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255

is an extraordinary measure, and cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

The pleadings of a *pro se* prisoner litigant are reviewed under a less stringent standard than those drafted by an attorney, and are provided a liberal construction. *Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, a *pro se* litigant is still required to provide sufficient facts to support his claims, and "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Accordingly, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertion on a critical issue in his *pro se* petition . . . to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

### *Ineffective Assistance of Counsel*

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Id*. at 687. A failure to establish

either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally sufficient. *Id*. at 696.

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Id*. at 689. To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Id*. at 695–96.

Moreover, "[t]he likelihood of a different result must be substantial, not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011), and a movant must prove that counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 686). Judicial scrutiny of this type of claim must be highly deferential and the defendant must overcome a strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Conclusory allegations of deficient performance and prejudice are not sufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

To show prejudice in the sentencing context, a defendant must demonstrate that the alleged deficiency of counsel created a reasonable probability that, but for counsel's error, his sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). A defendant cannot satisfy the second prong of *Strickland* through use of speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations will not suffice to obtain relief under section 2255. *Miller*, 200 F.3d at 282 (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

*Analysis*

Defendant claims that trial counsel was ineffective in failing to object to loss calculation errors and the level of restitution charged by the Government and ordered by the Court. Defendant's rendition of the underlying events as set forth in his memorandum of law (Docket Entry No. 569) goes outside the record and focuses on his own version of the facts. The Court will consider only those facts supported in the record.

Defendant contends that counsel should have objected to the loss claim and level of restitution as due process violations predicated on "outrageous government conduct."[1]

---

[1] Defendant also argues that counsel should have raised a defense of "sentence manipulation." However, this circuit has not adopted sentencing manipulation as a viable defense. "We have not decided whether sentencing entrapment or sentencing factor manipulation is a viable defense, and we need not do so here," citing *United States v. Stephens*, 717 F.3d 440, 446 (5th Cir. 2013). *United States v. Zuniga-Medrano*, 778 F. App'x 329, 329 (5th Cir. Oct. 2, 2019) (Mem. Op.). This Court

*Factual Basis for Loss Claim and Restitution*

At the plea hearing, the Government presented the following factual basis for defendant's guilty plea:

> Defendant Yepremian began – beginning in 2007 opened a series of clinics in Houston and Conroe and a Houston lab. These clinics and lab billed for medically unnecessary diagnostic tests and bloodwork on Medicare and Medicaid patients.
>
> The lab was called Empire Clinical Laboratory, Inc. The clinics were called Crawford Medical Services, Inc., Arca Medical Clinic, Inc., Care Family Practice, Inc., and Mid City Healthcare. All of those [were] located in Houston, Texas except for Arca, which began in Conroe, Texas and was later moved to Houston.
>
> Yepremian actively and knowingly conspired with many so-called marketers, including but not limited to Co-Defendants Michael Wayne Wilson, Eddie Wayne Taylor, Eric Johnson, and Jermaine Doleman (phonetic).
>
> Yepremian would pay the marketers to bring patients to his clinic and lab for testing. The marketers would in turn pay the patients for allowing Yepremian to bill their personal medical – their personal Medicare and Medicaid numbers. Sometimes Yepremian paid the patients directly.
>
> Count 23 presents a patient TM who was paid $100 directly by Yepremian on July 12th, 2012 for allowing medically unnecessary bloodwork to be billed on TM's Medicare number on that same day.
>
> Yepremian and others under his direction always researched the Medicare and Medicaid patients before he would allow the marketer to bring the patient to the clinic so the lab for the medically unnecessary diagnostics and tests.

---

declines to accept defendant's invitation to recognize and apply sentence manipulation on collateral review. Regardless, defendant "has not shown that he was persuaded to commit a greater offense than he otherwise was predisposed to commit or that the Government's conduct in the instant case was overbearing or outrageous." *Id*.

Numerous documents from the databases were recovered with a search warrant of the clinics and lab which showed the type of medical insurance the patient had. Yepremian would not allow marketers to bring any patients who had private insurance because Yepremian had a hard time getting those claims paid on those patients.

Also, Yepremian would not allow a patient to be billed upon who had been recently seen by one of his clinics. He would carefully stage the office visits two to three months apart and shift the patients back and forth between his clinics in an effort to fool Medicare and Medicaid. Yepremian held two of the businesses, Care Family and Empire Lab, in his name where he was the Medicare provider. He held the other clinics, Arca, Crawford, and Mid City, in the names of nominee owners or straw owners in an effort to fool Medicare and Medicaid.

The nominee owners were listed on the Medicare and Medicaid applications as the owners and operators of the clinics. However, at all times Yepremian controlled the bank accounts, where the Medicaid and Medicaid – excuse me, Medicare and Medicaid funds were deposited for all the clinics and lab.

Thus Medicare and Medicaid did not know that one person, Yepremian, controlled all the clinics and the blood lab and received all of the paid claims.

Yepremian's bank records show that he paid the nominee owners, some of whom also worked at the clinics and lab. Yepremian employed two physicians, Drs. Harding Ross and Faiz Ahmed, and one foreign medical graduate, Defendant Bompa Mompiere, who was not licensed in the State of Texas.

Defendants Ross and Ahmed knowingly ordered medically unnecessary diagnostic tests and bloodwork as part of the conspiracy. Additionally, Mompiere ordered medically unnecessary diagnostic tests and bloodworks on patients at the Arca Clinic in Conroe, but the claims would be billed as if one of the Defendant physicians treated the patients.

Yepremian knew Mompiere was unlicensed and allowed him to see and treat patients without any supervision by his licensed physicians.

> Also as part of the conspiracy Yepremian also traded signed, medically unnecessary home healthcare certifications, which were signed by coconspirators Ross and Ahmed for bloodwork on those patients.
>
> Numerous home healthcare companies fraudulently paid Yepremian for the 485, a term for home healthcare certifications. Yepremian allowed Mompiere and an aide to visit the companies and draw blood from the patients.
>
> Items recovered from the search warrant of the various clinics show that Yepremian kept records of the numbers of patients seen at the various home healthcare companies by Mompiere and how much Yepremian paid Mompiere for those visits.
>
> Search warrant material showed – excuse me, search warrant material showed Yepremian also kept records of how much he paid for each patient and what market terms associated with each patient.
>
> At various clinics, sign-in sheets were kept that indicated which patient was brought by a specific marketer in order to avoid disputes among the marketers over which patient belonged to which marketer.
>
> The office worker would pay the marketer after the patients had been seen and tested. Frequently the diagnostic tests were performed before the patient was seen by the physician.
>
> Yepremian routinely moved the proceeds of the healthcare fraud into bank accounts held in his name, his wife, and his daughter's name. From these accounts he purchased a Houston home on Stargate in his daughter's name as listed in the Superseding Indictment, and purchased numerous trucks for his trucking business called Arca.
>
> *As a result of this conspiracy, Defendant Yepremian and his coconspirators billed Medicare and Medicaid approximately $12,531,426.73 and were paid approximately $9,081,584.27* of which $197,675.90 was paid by Medicaid to the Defendant.

(Docket Entry No. 577, pp. 50–54, emphasis added.)   The Court then undertook the

following exchange with defendant:

| | |
|---|---|
| THE COURT: | Mr. Yepremian, you've heard Ms. Bradley summarize the facts that she believes she can prove if she goes to trial. Are there any corrections, changes, additions, or modifications you would like to make? |
| DEFENDANT: | (No audible response.) |
| THE COURT: | *Is her recitation true and correct?* |
| DEFENDANT: | *Yes, it's true and correct, Your Honor.* |
| THE COURT: | So, Mr. Yepremian, how do you plead to Counts 1 and 23, guilty or not guilty? |
| DEFENDANT: | I plead guilty. |
| THE COURT: | *You state here in Court that each and every allegation in the Indictment in those counts, as well as the factual résumé, is true and correct?* |
| DEFENDANT: | *Yes, Your Honor.* |
| THE COURT: | Are you making these two pleas of guilty freely and voluntarily? |
| DEFENDANT: | Yes. |
| THE COURT: | Has anyone forced you, threatened you, or coerced you or done any violence to you or any other person to get you to plead guilty? |
| DEFENDANT: | No, Your Honor. |
| THE COURT: | Are you pleading guilty because of any promise made to you apart from the plea agreement? |
| DEFENDANT: | No, Your Honor. |

9

| | |
|---|---|
| THE COURT: | Are you pleading guilty to protect another person from criminal prosecution? |
| DEFENDANT: | No, Your Honor. |
| THE COURT: | Are you pleading guilty because you are guilty and for no other reason? |
| DEFENDANT: | Yes. |
| THE COURT: | Have you read and do you understand the plea agreement? |
| DEFENDANT: | Yes, [your Honor]. |
| THE COURT: | Are you ready to sign the plea agreement? |
| DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Understanding that you are still under oath? |
| DEFENDANT: | Yes. |
| THE COURT: | All right. Then why don't we do that at this time. |

(Docket Entry No. 577, pp. 54–56, emphasis added.) The Court found that the plea was supported by independent facts establishing all of the elements of the offenses and that the guilty plea was voluntarily, knowingly, and freely made. *Id*., pp. 60–61. The Factual Basis for Guilty Plea set out in defendant's written plea agreement was essentially the same factual basis as presented by the Government during the plea hearing. (Docket Entry No. 145, pp. 10–14.) The PSR in this case tracks the above facts and events. (Docket Entry No. 432.)

*Loss Claim Errors*

Defendant claims that trial counsel failed to challenge or object to loss calculation errors that increased the offense level for sentencing purposes. This claim raises a claim for ineffective assistance of counsel in context of sentencing. (Docket Entry No. 568, p. 4.)

In his memorandum, defendant argues that the 3.5-year duration of the Government's investigation and use of a confidential informant was outrageous government conduct, as it increased the severity of his sentence. However, defendant's sentence was subsequently reduced to time served following the Court's granting of his motion for a compassionate release. Thus, at this point in time, only defendant's three-year term of supervised release and restitution order remain at issue.

Defendant's overarching argument is that the Government was in sole control of the ensuing loss claim amount. He argues that, had the Government ended its investigation prior to 3.5 years, the amount of loss for purposes of sentencing would have been less. In short, defendant claims that, by extending the investigation, and thus increasing the loss claim and amount of restitution, the Government utilized outrageous conduct in violation of his due process rights. According to defendant, the Government allowed its investigation "to continue far beyond the time necessary for a conviction." (Docket Entry No. 569, p. 21.)

The Fifth Circuit Court of Appeals addressed the issue of outrageous government conduct at length in *United States v. Pawlak*, 935 F.3d 337 (5th Cir. 2019). In *Pawlak*, the Fifth Circuit stated that government conduct is evaluated "in light of the undercover activity

necessary to the enforcement of the criminal laws," and that the outrageous conduct standard is "extremely demanding." *Id.* at 344. "[A] due process violation will be found only in the rarest and most outrageous circumstances." *Id*.

Relying on earlier Fifth Circuit precedent, the *Pawlak* court made clear that "the outrageous-conduct defense requires not only government over-involvement in the charged crime but a passive role by the defendant as well. *A defendant who actively participates in the crime may not avail himself of the defense*." *Id*., citing *United States v. Arteaga*, 807 F.2d 424, 427 (5th Cir. 1986) (emphasis added). *See also United States v. Posada Carriles*, 541 F.3d 344, 361 (5th Cir. 2008). In the instant case, defendant actively participated in the criminal offense, and withdrew from the criminal enterprise and activity only upon his arrest. Nothing in the record indicates that defendant prolonged or continued his criminal conduct solely as a result of the Government's investigation. Nor does defendant establish in the record that the Government had sufficient information to successfully obtain the ensuing indictment and convictions against him prior to conclusion of the 3.5-year investigation, or that the Government was not a "victim" for purposes of restitution.

Defendant fails to establish a viable legal basis for an outrageous government conduct claim, and he fails to show that, had counsel raised the claim, it would have been granted. Nor does defendant establish that, had counsel raised the claim, this Court would have imposed a term of supervised release less than three years, or that the restitution order and judgment would have been less.

Defendant fails to establish deficient performance and actual prejudice under *Strickland*, and habeas relief under section 2255 is unwarranted.

### *Evidentiary Hearing*

To any extent defendant requests an evidentiary hearing on his claims for ineffective assistance of counsel, the request is DENIED. The claims presented in this case can be, and have been, resolved on the basis of the record, and an evidentiary hearing is not required. *See United States v. Fields*, 565 F.3d 290, 298 (5th Cir. 2009).

### *Conclusion*

Defendant's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Docket Entry No. 568) is DENIED. A certificate of appealability is DENIED. The Clerk of Court shall ADMINISTRATIVELY CLOSE defendant's related civil case, *United States v. Yepremian*, C.A. No. H-19-1153 (S.D. Tex.).

Signed at Houston, Texas, on August  10 , 2021.

_____
Gray H. Miller
Senior United States District Judge